UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GREGORY BARTKO,                                    Case No. 22-12985

     Plaintiff,                                   F. Kay Behm

v.                                                 United States District Judge

MICHAEL GOETZ, *et al.*,

     Defendants.

_____ /

**OPINION AND ORDER GRANTING MOTION TO DISMISS (ECF No. 23) and**
**DENYING MOTION FOR LEAVE TO AMEND THE COMPLAINT (ECF No. 42)**

I.  **PROCEDURAL HISTORY**

According to the Complaint, Plaintiff, Gregory Bartko, challenges the

constitutionality of the provisions of Mich. Ct. Rule 9.123(D)(2) and (D)(3),

claiming that Defendants unlawfully enforced these rules in determining the

eligibility of a class of State Bar applicants that seek readmission to the State Bar

of Michigan following disbarment due to a criminal conviction.  (ECF No. 1).

Currently before the court is Defendants' motion to dismiss the complaint.  (ECF

No. 23).  This matter is fully briefed, and the court held a hearing via

videoconference on October 18, 2023.  (ECF Nos. 28, 30).  After the hearing,

Bartko filed a motion for leave to the amend the complaint, seeking to add a

§ 1983 conspiracy claim.  (ECF No. 42).[1]  This matter is fully briefed, and the court finds that a hearing is not necessary under E.D. Mich. L.R. 7.1(f)(2).  (ECF Nos. 46, 47).

Essentially, Bartko asks this court to conclude that the State's requirement that disbarred lawyers with felony convictions must complete their sentences before applying for reinstatement is unconstitutional.  The court finds that Bartko has failed to state a claim for a violation of his constitutional rights and thus, for the reasons more fully explained below, the court **GRANTS** the motion to dismiss the complaint.  Additionally, the court **DENIES** Plaintiff's motion for leave to amend the complaint.

## II.    FACTUAL BACKGROUND

On November 4, 2009, Bartko was indicted by a federal grand jury in North Carolina and charged with conspiracy, mail fraud, and sale of unregistered securities.  (ECF No. 1, ¶ 15).  He was convicted on November 18, 2010.  *Id*. at ¶ 16.  As a result of that conviction, Bartko was immediately suspended from the practice of law effective November 18, 2010.  *Id*. at ¶ 40.  On April 4, 2011, Bartko was sentenced to a term of imprisonment of 276 months (23 years) with the U.S.

---

[1] While the proposed new Count VII is labeled as a "conspiracy to commit fraud," the basis for the claim appears to be a § 1983 civil conspiracy.  *See* ECF No. 42-1, ¶ 194.

Bureau of Prisons.  *Id*. at ¶ 17.  Bartko participated in a telephonic hearing on

August 1, 2012 before a panel of the Attorney Discipline Board to determine

appropriate discipline based on his conviction, and Bartko alleges that he

concluded his comments at the hearing by indicating his intent to "voluntarily

surrender" his license.  *Id*. at ¶ 41.

On September 9, 2020, Bartko was placed on "home confinement" under

authority granted to the U.S. Attorney General by the CARES Act, Public Law

116—136—Mar. 27, 2020 134 Stat. 281.  (ECF No. 1, ¶ 18).   On May 13, 2021,

Bartko filed a petition for reinstatement with the Michigan Attorney Discipline

Board.  *Id*. at ¶ 19.  Bartko alleges that the Attorney Grievance Commission—

acting through Defendant Dajani, "with the authority reposed to her by

Defendant Goetz"—filed a motion to dismiss based upon Mich. Ct. R. 9.123(D)(3).

*Id*. at ¶ 20.  Mich. Ct. R. 9.123(D) provides:

> (D) Petition for Reinstatement; Filing Limitations.
>
> (1) Except as provided in subrule (D)(3), an attorney
> whose license to practice law has been suspended may
> not file a petition for reinstatement earlier than 56 days
> before the term of suspension ordered has fully elapsed.
>
> (2) An attorney whose license to practice law has been
> revoked or who has resigned may not file a petition for
> reinstatement until 5 years have elapsed since the
> attorney's resignation or disbarment.

(3) An attorney whose license to practice law has been suspended because of conviction of a felony for which a term of incarceration was imposed may not file a petition for reinstatement until six months after completion of the sentence, including any period of parole.

(4) An attorney who has been disbarred or suspended and who has been denied reinstatement may not file a new petition for reinstatement until at least 1 year from the effective date of the most recent hearing panel order granting or denying reinstatement.

Bartko argued in opposition to the motion that Mich. Ct. R. 9.123(D)(3) applied only to lawyers "suspended" from the practice of law and not to disbarred lawyers, and that only Mich. Ct. R. 9.123(D)(2) controlled the length of time before a disbarred lawyer became eligible for reinstatement. *Id*. at ¶ 21.

On July 8, 2021, the hearing panel of the Attorney Discipline Board (ADB) issued an order granting the motion to dismiss. (ECF No. 1, ¶ 22). Counsel for the Grievance Administrator filed a motion to dismiss the petition for reinstatement, based on Mich. Ct. R. 9.123(D)(3), which provides that "[a]n attorney whose license to practice law has been suspended because of conviction of a felony for which a term of incarceration was imposed may not file a petition for reinstatement until six months after completion of the sentence, including any period of parole." (ECF No. 23-4, PageID.320). Bartko argued that Mich. Ct. R. 9.123(D)(3) does not apply, because his license was revoked, not suspended. He

further argued that his petition should be analyzed under Mich. Ct. R. 9.123(D)(2),

which provides that "[a]n attorney whose license to practice law has been

revoked or who has resigned may not file a petition for reinstatement until 5

years have elapsed since the attorney's resignation or disbarment." *Id*. at

PageID.320-21.  The hearing panel granted the motion to dismiss, concluding that

pursuant to Mich. Ct. R. 9.123(D)(3), "petitioner will not be eligible to file a

petition for reinstatement until six months after the completion of his sentence,

which at this time is not until 2030." *Id*. at PageID.321.

Bartko then petitioned the ADB for review of the hearing panel's decision

on July 12, 2021.  *Id*. at ¶ 23.  The ADB held a hearing on Bartko's petition, and

issued a written order and opinion on December 6, 2021 that affirmed the

hearing panel's decision.  *Id.* at ¶ 24; *see also* ECF No. 23-3 (ADB Order dated

12/6/21); ECF No. 23-4 (ADB Opinion dated 12/6/21).  The ADB framed the issue

before them as follows: "whether a disbarred attorney is eligible to apply for

reinstatement while he is still under the jurisdiction of the BOP." *Id*.  The ADB

determined that it need not resolve the issue of whether subsection (D)(3)

applied only to suspended attorneys or also applied to disbarred attorneys.  *Id*. at

322.  This was so because ADB determined that the dispute was governed by the

Michigan Supreme Court case *In re McWhorter*, 449 Mich. 130 (1995), in which

the Court held that a petitioner could not apply for reinstatement while on parole

and may not re-apply for reinstatement until he could "demonstrate his

honorable behavior outside such authorities for a period that would enable this

Court to safely recommend him to the public." *Id*. at 141.  In that case, the Court

determined that the petitioner was not eligible for reinstatement until five years

from the date of his release from federal parole.  *Id*.  The ADB similarly found that

Bartko was not "released" as he claimed, but was serving his sentence under

home confinement, which is still considered to be in the legal custody of BOP.

(ECF No. 23-4, PageID.324).  The ADB found *McWhorter* controlling and concluded

that Bartko could not apply for reinstatement until five years had elapsed from his

release from federal supervision.  *Id*.

On January 1, 2022, Bartko filed an application for leave to appeal with the

Michigan Supreme Court, which was denied on April 27, 2022.  (ECF No. 1, ¶ 28).

This lawsuit followed.

## III.    MOTION TO DISMISS

### A.    Standards of Review

#### 1.    *Subject Matter Jurisdiction*

A motion brought under Federal Rule of Civil Procedure 12(b)(1) alleges

that the court does not have subject matter jurisdiction over the claims as

presented.  Fed. R. Civ. P. 12(b)(1).  Motions brought under Rule 12(b)(1) fall into

two categories: facial attacks and factual attacks.  *United States v. Ritchie*, 15 F.3d

592, 598 (6th Cir. 1994).  A facial attack is a "challenge to the sufficiency of the

pleading itself" whereas a factual attack "is a challenge to the factual existence of

subject matter jurisdiction."  *Id*.  "A motion to dismiss for lack of subject matter

jurisdiction pursuant to *Rooker-Feldman*[2] is a facial attack of a court's subject

matter jurisdiction."  *King v. CitiMortgage, Inc*., No. 2:10-CV-01044, 2011 WL

2970915, at *5 (S.D. Ohio July 20, 2011) (Graham, J.); *see also Reguli v. Guffee*,

371 F. App'x 590, 595 (6th Cir. 2010) (treating *Rooker-Feldman* argument as a

facial attack on subject-matter jurisdiction).

> 2.      *Rule 12(b)(6)*

In deciding a motion to dismiss under Rule 12(b)(6), the court "must

construe the complaint in the light most favorable to the [nonmoving party] ...

[and] accept all well-pled factual allegations as true*." League of United Latin Am.

Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007); *see also Yuhasz v. Brush

Wellman, Inc*., 341 F.3d 559, 562 (6th Cir. 2003).  The complaint must provide "'a

short and plain statement of the claim showing that the pleader is entitled to

---

² So named for the cases of *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983) and *Rooker v. Fidelity Trust Co*., 263 U.S. 413 (1923).

relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'"  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  Moreover, the complaint must "contain[ ] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009).

A complaint is subject to dismissal for failure to state a claim if the allegations, taken as true, show the plaintiff is not entitled to relief, such as "when an affirmative defense ... appears on its face."  *Jones v. Bock*, 549 U.S. 199, 215 (2007) (quotation marks omitted).  A claim has "facial plausibility" when the nonmoving party pleads facts that "allow[ ] the court to draw the reasonable inference that the [moving party] is liable for the misconduct alleged."  *Id*. at 678. However, a claim does not have "facial plausibility" when the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct."  *Id*. at 679.  The factual allegations "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show entitlement to relief."  *League of United Latin Am. Citizens*, 500 F.3d at 527.  Showing entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Ass'n of Cleveland Fire*

*Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).

    B.   <u>*Rooker-Feldman*</u>

    The parties disagree on whether this court lacks subject matter jurisdiction over this dispute based on the *Rooker-Feldman* doctrine.  "The *Rooker–Feldman* doctrine embodies the notion that appellate review of state court decisions and the validity of state judicial proceedings is limited to the Supreme Court under 28 U.S.C. § 1257, and thus that federal district courts lack jurisdiction to review such matters."  *In re Cook*, 551 F.3d 542, 548 (6th Cir. 2009).  The United States Supreme Court has stated that the doctrine "is confined to ... cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."  *Exxon Mobil Corp. v. Saudi Basic Indus. Corp*., 544 U.S. 280, 284 (2005).  The Sixth Circuit has explained that, to determine whether the *Rooker-Feldman* doctrine applies, courts must look to the "source of the injury the plaintiff alleges in the federal complaint," *McCormick v. Braverman*, 451 F.3d 382, 393 (6th Cir. 2006) and "consider what relief the plaintiff requests," *RLR Invs., LLC v. City of Pigeon Forge, Tenn*., 4 F.4th 380, 388 (6th Cir. 2021).  If the source of the plaintiff's injury is the state-court judgment,

then *Rooker-Feldman* bars the claim.  *McCormick*, 451 F.3d at 393; *RLR Invs.,* 4 F.4th at 388 (explaining that "the test is whether the plaintiff's injury stems from the state-court judgment, not whether the claims [asserted in state and federal court] are identical").  "If there is some other source of injury, such as a third party's actions, then the plaintiff asserts an independent claim," and the district court has jurisdiction over the claim.  *McCormick*, 451 F.3d at 393.  "A court cannot determine the source of the injury without reference to [the plaintiff's] request for relief."  *Berry v. Schmitt*, 688 F.3d 290, 299 (6th Cir. 2012) (punctuation modified).

The court starts its inquiry by looking at the request for relief in the complaint:

> A. That the Court enter a declaratory judgment that the Defendants' enforcement of MCR 9.123(D)(3) requiring any un-incarcerated disbarred Michigan lawyer who has been convicted of a criminal offense from seeking readmission to the Georgia [sic] Bar after five years after the date of disbarment but before the applicant's sentence is completed be deemed to be violative of the Equal Protection Clause of the Constitution, the Due Process Clause of the Constitution, 42 U.S.C. § 1983 42 U.S.C. § 1985 and violative of the separation of powers doctrine; and
>
> B. That the Court enter a permanent injunction prohibiting the Defendants from further enforcement of MCR 9.123(D)(3) by requiring any un-incarcerated disbarred Michigan lawyer who has been

convicted of a criminal offense from seeking readmission to the Michigan Bar after five years after the date of disbarment but before the applicant's sentence is completed as being violative of the Equal Protection Clause of the Constitution, the Due Process Clause of the Constitution, and the separation of powers doctrine;

C.     That the Court enter judgment declaring that all Michigan Bar applicants that fall within the subclass of disbarred Michigan lawyers similarly situated as Bartko and who are released from incarceration may apply for reinstatement to the Michigan Bar so long as they otherwise qualify within the Reinstatement Rules, specifically MCR 9.123(D)(2). * * *

(ECF No. 1, PageID.75).[3]

According to Defendants, this inquiry is resolved by turning to the Sixth Circuit case *In re Cook*, 551 F.3d 542, 548 (6th Cir. 2009) in which the court held that "the *Rooker-Feldman* doctrine... precludes review of any claims arising directly out of [a plaintiff's] state disbarment proceedings or [a state] Supreme Court's disbarment order." *See also Saier v. State Bar of Michigan*, 293 F.2d 756, 759 (6th Cir. 1961) (holding that federal courts do not sit in review of state bar disciplinary proceedings). The plaintiff appealed from an order of disbarment entered by the Northern District of Ohio. *Cook*, 551 F.3d at 544. She raised two issues on appeal: "(1) that the Ohio courts denied her due process during her

---

[3] Notably, the ADB did not "enforce" or "apply" subsection (D)(3). Instead, it applied *McWhorter* as a matter of common law, which "borrowed" the timelines from Mich. Ct. Rule 9.123 but did not directly apply it.

state disbarment proceedings; and (2) that these due process violations in her

state disbarment proceedings tainted the district court's proceedings." *Id.* The

court explained in *Cook* that the *Rooker-Feldman* doctrine precluded a district

court from exercising subject-matter jurisdiction over a claim where "the 'source

of the injury' upon which plaintiff bases his federal claim is the state court

judgment." *Id.* at 548 (quoting *Lawrence v. Welch*, 531 F.3d 364, 368 (6th Cir.

2008) (citation omitted)). This bar also applies where the party challenges the

validity of the state court judgment on constitutional grounds. *Id*. Defendants

argue that the "sources" of Bartko's injury are the orders denying his petition for

reinstatement and thus, *Rooker-Feldman* precludes this court from exercising

jurisdiction.

Bartko maintains that this inquiry is governed by *Dubuc v. Michigan Bd. of

Law Examiners*, 342 F.3d 610 (6th Cir. 2003). In *Dubuc*, the court found that

*Rooker-Feldman* did not bar the plaintiff's claim because he was not challenging

the denial of the 1998 bar admission application, but the Michigan Supreme Court

Rules concerning the State Bar of Michigan which prohibited him from reapplying

for five years from the date of his initial denial. *Id*. at 618. The petitioner sought

to attack the rule that an unsuccessful applicant must wait longer before

reapplying if the applicant sought a *de novo* hearing from the Board of Law

12

Examiners regarding his first application.  *Id*.  He also sought injunctive and

declaratory relief prohibiting defendants from using First Amendment activities as

a basis for denying admission to the Bar.  *Id*.  Thus, the court concluded that

because the plaintiff did not "seek to have the district court overturn the denial of

his 1998 application, the *Rooker–Feldman* doctrine is inapplicable to this lawsuit."

*Id*.

The difference in outcomes between *Cook* and *Dubuc* is explained by

turning directly to the source: *Feldman*.  There, the Supreme Court held that the

district court did not have jurisdiction over claims that the District of Columbia

Court of Appeals acted arbitrarily and capriciously in denying the plaintiffs'

petitions for waiver of the rule requiring an applicant to graduate from an

accredited law school before sitting for the bar exam because such allegations

were "inextricably intertwined" with the District of Columbia Court of Appeals

decisions to deny their petitions.  460 U.S. at 486-487.  However, the remaining

allegations in the complaint involved a general attack on the constitutionality of

the rule that prevented the plaintiffs from sitting for the bar examination:

> The respondents' claims that the rule is unconstitutional
> because it creates an irrebuttable presumption that only
> graduates of accredited law schools are fit to practice
> law, discriminates against those who have obtained
> equivalent legal training by other means, and
> impermissibly delegates the District of Columbia Court

> of Appeals' power to regulate the bar to the American
> Bar Association, do not require review of a judicial
> decision in a particular case.  The District Court,
> therefore, has subject matter jurisdiction over these
> elements of the respondents' complaints.

*Id*. at 487.  Here, to the extent that Bartko's claims challenge the constitutionality

of Mich. Ct. R. 9.123[4] (or challenge the constitutionality of *McWhorter*) as it would

apply to Bartko's future right to petition for reinstatement, such a claim is not

barred by *Rooker-Feldman*.  However, some of Bartko's claims and arguments

---

[4]  As Defendants point out in their Notice of Supplemental Authority, Mich. Ct. Rule 9.123(D) has recently been amended:

> (D) Petition for Reinstatement; Filing Limitations.
>
> (1) [Unchanged.]
>
> (2) Except as provided in subrule (D)(3), a~~An~~ attorney whose license to practice law has been revoked or who has resigned may not file a petition for reinstatement until 5 years have elapsed since the attorney's resignation or disbarment.
>
> (3) An attorney whose license to practice law has been revoked or suspended because of conviction of a felony for which a term of incarceration was imposed may not file a petition for reinstatement until the later of:
>
>> (a) the period in subrule (D)(1) or (D)(2), as applicable in light of the discipline imposed; or
>>
>> (b) six months after completion of the sentence, including any period of parole or supervised release.

(ECF No. 37-2) (additions to the text are indicated in underlining and the deleted text is shown by strikeout).  The amendments are effective January 1, 2024.  *Id*.  Given that Bartko will not have completed his sentence when the amended rule goes into effect, he will not be eligible to apply for reinstatement under the revised rule for some time.

seem dependent on this court finding that the ADB erred in its decision-making process.  To the extent Bartko makes any such claims, they are barred by *Rooker-Feldman*.

      C.    <u>Failure to State a Claim Under Rule 12(b)(6)</u>

          1.   *Equal Protection*

Bartko purportedly identifies two equal protection claims in the Complaint. In Count I, he alleges that Defendants' enforcement of Mich. Ct. R. 9.123 and 9.124 discriminates among: (1) disbarred State Bar applicants who facially qualify to petition for readmission to the State Bar under Mich. Ct. R. 9.123(D)(2); (2) disbarred applicants who have been convicted of criminal offenses and who have completed all terms of their sentence; and (3) disbarred applicants who have not completed the terms of their sentence but are not incarcerated.  (ECF No. 1, ¶ 69).  In Count II, he asserts an equal protection claim under "heightened scrutiny."  The court will address this claim first.

Bartko acknowledges that the equal protection claim in Count II is the same as Count I but contends that heightened scrutiny applies because Defendants have classified the right to petition for reinstatement to those disbarred attorneys who are sufficiently wealthy to have paid all court costs, imposed fines and restitution (as part of the completion of sentence requirement) compared to

those same disbarred attorneys who are unable to do so.  (ECF No. 1, ¶ 137; ECF

No. 28, PageID.449).  Bartko cites *M.L.B. v. S.L.J*, 519 U.S. 102 (1996) and *Griffin v.*

*Illinois*, 351 U.S. 12, 16 (1956) in support of his claim.  These cases are inapposite.

In *Griffin*, the Court held that it was a denial of due process and equal protection

to require an indigent criminal defendant to pay court costs in advance in order to

press the appeal of his conviction.  351 U.S. at 18.  In *M.L.B.*, the Court found that

a state statute conditioning an indigent mother's right to appeal a judgment

terminating her parental rights on prepayment of costs violated both equal

protection and due process.  519 U.S. at 125.  The Court reasoned that the

termination of parental rights was more like a defendant resisting a criminal

conviction and unlike those cases where the court determined that the

government was not required to fund an indigent person's exercise of

constitutional rights:

> Complainants in the cases on which respondents rely
> sought state aid to subsidize their privately initiated
> action or to alleviate the consequences of differences in
> economic circumstances that existed apart from state
> action. M. L. B.'s complaint is of a different order.  She
> is endeavoring to defend against the State's destruction
> of her family bonds, and to resist the brand associated
> with a parental unfitness adjudication.  Like a
> defendant resisting criminal conviction, she seeks to be
> spared from the State's devastatingly adverse action.

*Id*.  Here, Bartko does not claim that the payment of fines or costs precluded him

from pursuing his application for reinstatement.  Further, Bartko does not provide

any authority for the proposition that seeking reinstatement of his law license is

akin to the rights to appeal a criminal conviction or the termination of parental

rights.  Indeed, a license to practice law does not implicate a fundamental right.

*See* n. 2, *infra*.  Accordingly, the court finds no basis to conclude that any

heightened scrutiny applies to his equal protection claim and Count II must be

dismissed.

As to his claim in Count I, Bartko says he is challenging "the irrational

application of the sentence completion limitation as applied to previously

convicted disbarred State Bar lawyers."  (ECF No. 28, PageID.433).  More

specifically, he alleges:

> The inconsistency in the enforcement of MCR
> 9.123(D)(3) against the five-year eligibility limitation in
> MCR 9.123(D)(2) results in a per se irrational
> enforcement of the sentence completion eligibility
> limitation.  The Defendants' actions are rationally
> explicable only by an intent to impose burdens on a
> disfavored group—here felons who have not completed
> all terms of their criminal sentence but are no longer
> incarcerated and are capable of practicing law assuming
> they meet all other conditions required by the Eligibility
> Rules.  Disbarred applicants who comply with MCR
> 9.123(B) satisfy the due process and equal protection
> standards adopted by the Supreme Court in *Schware* [*v.
> Board of Bar Examiners*, 353 U.S. 232 (1957)].

(ECF No. 28, PageID.433).

Where no suspect class or fundamental right[5] is implicated, governmental

action subject to equal protection scrutiny under the rational basis test must be

sustained if any conceivable basis rationally supports it.  *TriHealth, Inc. v. Bd. Of*

*Comm'rs, Hamilton Cnty., Ohio*, 430 F.3d 783, 790 (6th Cir. 2005) (citing *Federal*

*Communications Commission v. Beach Communications*, Inc., 508 U.S. 307, 313–

14 (1993)).  The linchpin of an equal protection claim is that the government has

intentionally treated people who are similarly situated in a different manner

without a rational basis for the disparate treatment.  *Village of Willowbrook v.*

*Olech*, 528 U.S. 562, 564 (2000); *Ross v. Duggan*, 402 F.3d 575, 587-88 (6th Cir.

2004).  "A 'class of one' plaintiff may demonstrate that a government action lacks

a rational basis in one of two ways: either by 'negati[ng] every conceivable basis

which might support' the government action or by demonstrating that the

---

[5] Courts generally hold that a license to practice law does not implicate a fundamental right.  *T.W. v. New York State Board Of Law Examiners*, 2022 WL 2819092, at *6 (E.D.N.Y. July 19, 2022); *Block v. Tex. Bd. of L. Examiners*, No. 18-cv-386, 2019 WL 433734, at *3 (W.D. Tex. Feb. 1, 2019) ("This Court's research indicates that every court that has addressed the issue has concluded that the practice of law is not a fundamental right."); *Jones v. Bd. of Comm'rs of Ala. State Bar*, 737 F.2d 996, 1000 (11th Cir. 1984) (finding no fundamental right to take the bar examination and noting that the Supreme Court "has never held that the right to pursue a particular occupation is a fundamental right"); *Smith v. Walsh*, 519 F. Supp. 853, 858 (D. Conn. 1981) ("Nor is there any fundamental right to obtain a license to practice a certain profession.").

challenged government action was motivated by animus or ill-will." *Anders v. Cuevas*, 984 F.3d 1166, 1179 (6th Cir. 2021) (quoting *Warren v. City of Athens*, 411 F.3d 697, 711 (6th Cir. 2005) (citation omitted).[6]

Bartko's equal protection claim fails.  The groups identified by Bartko are not similarly situated.  A disbarred attorney convicted of a felony who has not yet completed his sentence for a criminal conviction is not similarly situated to a disbarred attorney convicted of a felony who has completed his sentence or a disbarred attorney with no criminal conviction.  The Sixth Circuit has held that plaintiffs "have the burden of demonstrating that they were treated differently than other property owners who were similarly situated in all material respects." *Loesel v. City of Frankenmuth*, 692 F.3d 452, 462 (6th Cir. 2012).  It is plainly a material difference that one group of disbarred attorneys has completed a sentence for a criminal conviction (or has no such convictions) and the other group has not.  As explained further below, Bartko has failed to negate the

---

[6] In Count I, Bartko seems to suggest a purported "alternative" theory of a "class-of-one" for his equal protection claim.  This is not, however, a separate claim.  Such a claim is merely shorthand for an equal protection claim based on the intentional treatment of one differently from others similarly situated without any rational basis.  As the Sixth Circuit explained in *Franks v. Rubitschun*, 312 F. App'x 764, 766 (6th Cir. 2009), while such claims are typically referred to as "class-of-one" claims, there is no requirement that the challenged government action single out one solitary person.  Instead, "[w]hether the complaint alleges a class of one or of five is of no consequence because we conclude that the number of individuals in a class is immaterial for equal protection analysis." *Id.* (quoting *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 n. * (2000)).

rational basis for Defendants' actions in treating the three groups differently and thus cannot show that the groups were similarly situated in all material respects. *See Trihealth, Inc. v. Bd. Of Comm'rs*, 430 F.3d 783, 790 (6th Cir. 2005) ("Materiality is an integral element of the rational basis inquiry … Disparate treatment of persons is reasonably justified if they are dissimilar in some material respect.").

Importantly, the Sixth Circuit has recognized that "[a] state's interest in regulating the practice of law within its borders is compelling, because lawyers are essential to the primary governmental function of administering justice." *Blanton v. United States*, 94 F.3d 227, 234 (6th Cir. 1996) (quoting *Salibra v. Supreme Court of Ohio*, 730 F.2d 1059, 1063 (6th Cir. 1984).  And, the function of the ADB is to represent a critical interest, which is the "protection of the public, courts and legal profession."  *In re Matter of Woll*, 401 Mich. 155, 161 (1977); *see also Matter of Trombly*, 398 Mich. 377, 382 (1976) ("Regardless of our feelings of sympathy for a disbarred attorney, our paramount concern must always be to safeguard the public.").  Endeavoring to protect the public, the courts, and the legal profession, the Michigan Supreme Court has, on multiple occasions, identified a rational basis for imposing different requirements on disbarred attorneys who have felony convictions as explained in *McWhorter* and in

*Grievance Administrator v. August*, 428 Mich. 296 (1991).  In *August*, the Court

expressly rejected the notion that an attorney is entitled to reinstatement if the

factors set forth in Mich. Ct. R. 9.123(B)(1)-(6) are satisfied and five years have

passed since the disbarment.  Instead, the Court explained that five years was the

minimum amount of time "after which a disbarred attorney may be declared

rehabilitated."  428 Mich. at 309.  Further, each such case must be decided on its

own facts and the "determination whether the disbarred attorney may be safely

recommended to the position of public trust held by members of the state bar

necessarily requires consideration of the time elapsed since disbarment and since

the commission of the acts resulting in disbarment."  *Id*.  Further in *McWhorter*,

the Court held that five years after the completion of parole was the minimum

time in which a petitioner could apply for reinstatement.  449 Mich. at 142.

From these authorities, the court easily discerns a rational basis for the

state to treat disbarred attorneys with felony convictions who have not yet even

completed their sentences differently from those who have completed their

sentences or disbarred attorneys with no criminal convictions.  As explained in

*McWhorter*, it is wholly rational for the state to require a petitioner to have spent

sufficient time outside the supervision of federal authorities in order to determine

whether the petitioner has been rehabilitated and may be safely recommended

for reinstatement.  449 Mich. at 141.  Bartko's complaint fails to negate the

rational basis for Defendants' actions: the protection of the public from a

convicted felon currently still serving a lengthy sentence.  Therefore, he fails to

state an equal protection claim and Count I must be dismissed.[7]

> 2.    *Procedural and Substantive Due Process*

Defendants argue that Bartko cites to no law or authority establishing any

kind of liberty or property interest in having his law license reinstated after he has

been disbarred.  *See Deters v. Ky. Bar Ass'n*, 646 F. App'x 468, 476 (6th Cir. 2016)

(no protected property interest in reinstatement where license to practice law

was conditioned on continued adherence to unambiguous standards of conduct);

Mich. Ct. R. 9.103(A) ("It is the duty of every attorney to conduct himself or

herself at all times in conformity with standards imposed on members of the bar

as a condition of the *privilege* to practice law.") (emphasis added).  Bartko's

response does not address this argument, but he insists that Defendants' actions

are governed by *Schware v. Bd. Of Bar Exam. Of State of N.M.*, 353 U.S. 232

(1957).  There, the Supreme Court held that a State cannot exclude a person from

the practice of law or any other occupation for reasons that violate due process or

---

[7] To the extent Bartko's equal protection claims are based on the proceedings that have already occurred, they are also barred by *Rooker-Feldman*.

equal protection.  *Id*. at 239.  In *Schware*, the state conceded that Schware was

qualified to take the bar examination in all respects other than "good moral

character."  *Id*.  A state can require good moral character as a qualification for bar

admittance, but any requirement must have a rational connection with the

applicant's fitness or capacity to practice law.  *Id*.  The Court found the stated

reasons for concluding Schware lacked good moral character (the use of aliases to

secure employment to avoid antisemitic discrimination, arrests without any

formal charges or convictions, and membership in the Communist party) did not

rationally justify a finding that Schware was morally unfit to practice law.  *Id*. at

246-247.  As explained in detail above, the fact that Bartko has not completed his

sentence for a serious criminal conviction provides a sufficient rational basis for

Defendants' actions denying his petition for reinstatement.  Thus, Defendants'

actions do not run afoul of *Schware* and any procedural due process claim must

fail.  Accordingly, Count III is dismissed.

Bartko does not address the arguments raised by Defendants in support of

the motion to dismiss the substantive due process claim and does not offer any

arguments in support of this claim.  (ECF No. 28, PageID.449-53).  Accordingly, he

has abandoned this claim.  *See Doe v. Bredesen*, 507 F.3d 998, 1007-08 (6th Cir.

2007) (stating that the district court "correctly noted … that [plaintiff] abandoned

[certain] claims by failing to raise them in his brief opposing the government's motion to dismiss the complaint"); *PNC Bank, Nat'l Ass'n v. Goyette Mech. Co.*, 88 F. Supp. 3d 775, 785 (E.D. Mich. 2015) ("A plaintiff abandons undefended claims."); *Mekani v. Homecomings Fin., LLC*, 752 F. Supp. 2d 785, 797 (E.D. Mich. 2010) (stating that where a plaintiff fails to respond to an argument in a motion to dismiss, "the Court assumes he concedes this point and abandons the claim"). Count IV is, therefore, dismissed.

### 3. Separation of Powers

In Count V of the Complaint, Bartko alleges a violation of the separation of powers based on the "imposition of the sentence completion eligibility limitation enforced by the Defendants impermissibly delegates authority to an applicant's sentencing judge who imposes a criminal sentence on a Michigan lawyer disbarred following a criminal conviction." (ECF No. 1, ¶ 156). Bartko explains in his response brief that he challenges the Defendants' enforcement of a sentence completion limitation imposed on previously convicted State Bar lawyers that relegates the length of time those applicants must wait to petition for reinstatement to a sentencing judge rather than the Michigan Supreme Court. (ECF No. 28, PageID.454). Bartko does not address any of the arguments raised by Defendants in the motion to dismiss this claim. Instead, he says that although

he framed this claim as a separation of powers violation in the Complaint, he now says this claim is premised on the doctrine of federalism because it is a violation of the Tenth Amendment for Defendants to defer to a federal sentencing judge to determine the length of time a disbarred applicant must wait to file a petition for reinstatement under Mich. Ct. R. 9.123(D)(2).  *Id*.  This claim is not made in the Complaint, and it will be given no further consideration.  *See Batchelor v. Byrd*, No. 15-1099, 2015 WL 7681270, at *4 (W.D. Tenn. Nov. 25, 2015) (Plaintiff may not raise new claim for the first time in a response to a motion to dismiss the complaint); *Terry v. Tyson Farms, Inc*., 604 F.3d 272, 275-76 (6th Cir. 2010) ("[T]o survive a motion to dismiss, the complaint must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory.").  Additionally, by failing to respond to Defendants' arguments regarding this claim identified in the Complaint, and given his attempted recharacterization of this claim, Count V is deemed abandoned and is dismissed.  *See Doe v. Bredesen*, *supra*.

       4.   *Conspiracy*

"A claim for civil conspiracy under § 1983 exists only where the plaintiff has established a separate and actionable constitutional injury."  *Rapp v. Dutcher*, 557 F. App'x 444, 450 (6th Cir. 2014) (citing *Bauss v. Plymouth Twp*., 233 F. App'x. 490,

500 (6th Cir. 2007)).  Count VI alleges conspiracy to violate constitutional rights,

but such a claim cannot be sustained where there is no underlying constitutional

violation.  *See Wiley v. Oberlin Police Dep't*, 330 F. App'x 524, 530 (6th Cir. 2009)

("[Plaintiff] cannot succeed on a conspiracy claim because there was no

underlying constitutional violation that injured her."); *Van Buren v. Crawford

Cnty.*, No. 13-14565, 2017 WL 3479546 at *7 (E.D. Mich. Aug. 14, 2017) ("Under

both federal and Michigan law, civil conspiracy claims are derivative.  They are

cognizable only insofar as there is an underlying cognizable legal claim.")

Accordingly, this claim must be dismissed.

## IV.    MOTION FOR LEAVE TO AMEND THE COMPLAINT

Bartko seeks to add a § 1983 civil conspiracy claim to his complaint.

Pursuant to Federal Rule of Civil Procedure 15(a)(2), "a party may amend its

pleading only with the opposing party's written consent or the court's leave.  The

court should freely give leave when justice so requires."  Generally, Rule 15(a)(2)

embodies a "liberal amendment policy."  *Brown v. Chapman*, 814 F.3d 436, 442-

43 (6th Cir. 2010).  However, leave to amend may be denied when there is

"undue delay, bad faith or dilatory motive on the part of the movant, repeated

failure to cure deficiencies by amendments previously allowed, undue prejudice

to the opposing party by virtue of allowance of the amendment, futility of

amendment, etc." *Id.* at 443.  A proposed amendment is considered futile if "the amendment could not withstand a Rule 12(b)(6) motion to dismiss." *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000).

The court finds the proposed amendment to be futile.  A § 1983 claim is dependent on the existence of a viable underlying constitutional injury.  And, as explained above, "[a] claim for civil conspiracy under § 1983 exists only where the plaintiff has established a separate and actionable constitutional injury." *Rapp,* 557 F. App'x at 450.  Thus, where, as here, a plaintiff fails to state a claim for violation of his constitutional rights, a § 1983 civil conspiracy claim must also fail. *See Stricker v. Twp. of Cambridge*, 710 F.3d 350, 365 (6th Cir. 2013) (affirming the dismissal of a § 1983 conspiracy claim because the plaintiff failed to plausibly allege an underlying constitutional harm).  Thus, the proposed amendment is futile.

And to the extent that the proposed Count VII sounds in state law, the court also finds it futile because the court must also dismiss any such state law claim where all federal claims have been dismissed.  *Vos v. Cordray*, 719 F. Supp. 2d 832, 843 (N.D. Ohio 2010) ("In cases where the federal law claims are dismissed before trial, the state law claims should also be dismissed.") (citing *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966)).

## V.      CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss the

complaint is **GRANTED** and Plaintiff's motion for leave to amend the complaint is

**DENIED**.  The remaining motion pending is **DENIED** as moot (ECF No. 40).  This is a

final order and closes this case.

**SO ORDERED**.

Date: November 30, 2023                    s/F. Kay Behm
                                           F. Kay Behm
                                           United States District Judge